IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTT A. BOLES, | ) | 4:11CV3031 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| UNUM LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

  This matter is before me on Defendant UNUM Life Insurance Company of America's ("UNUM") Motion for Judicial Determination of ERISA Application and Preemption. (Filing 20.) For the reasons discussed below, I will construe UNUM's motion as a motion for partial summary judgment and grant it.

## BACKGROUND

  On March 9, 2011, Scott A. Boles ("Boles") filed this matter asserting two claims for relief against UNUM. (*See* Filings 1 and 25.) The first claim for relief is related to a group disability policy which is part of a long-term disability plan sponsored by Boles' employer. The parties agree that the group policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Filings 1 and 9.) The second claim for relief is a breach of contract claim relating to a separate individual disability policy. (Filing 1 at CM/ECF p. 4.) The parties disagree as to whether ERISA governs the individual disability policy. (*See* Filings 21 and 25.)

  On June 13, 2011, Magistrate Zwart scheduled a status conference with the parties. (Filing 13.) After conducting the status conference, Magistrate Zwart entered a memorandum and order directing the parties to complete discovery regarding the application of ERISA to Boles' second claim for relief. (Filing 14.) In doing so, Magistrate Zwart stated that "If the ERISA issue is not resolved by the parties'

stipulation, on or before October 5, 2011, the parties, or one of them, shall move for a judicial determination on whether this case is governed by ERISA." (*Id*.) On September 22, 2011, UNUM moved for an extension of time to respond to Magistrate Zwart's October 5, 2011, deadline. (Filing 18.) Magistrate Zwart granted UNUM's motion and UNUM filed a Motion for Judicial Determination on ERISA Application and Preemption on October 12, 2011. (Filing 20.)

In its motion, UNUM argues that it "does not claim that a determination of ERISA applicability would dispose of any claim." (Filing 27 at CM/ECF p. 1.) I disagree. If ERISA applies to Boles' second claim for relief, a breach of contract claim, it would preempt it and thereby dispose of it. *See Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 937 (8th Cir. 2011) (stating "ERISA also expressly preempts 'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy.'" (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004))). Stated another way, because UNUM's motion asks me to determine whether ERISA applies to Boles' individual disability policy, UNUM has in all practical effect asked me to determine whether Boles' breach of contract claim may proceed. Accordingly, I will construe UNUM's motion as a motion for partial summary judgment.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be

2

admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Although the parties have not fully complied with the court's local rules, UNUM has submitted a brief and an index of evidence in support of its motion. (Filing 21 at CM/ECF pp. 1-6; Filing 22.) Boles has responded with a brief in opposition to UNUM's motion and an index of evidence in support. (Filing 25 at CM/ECF pp. 4-13; Filing 26.) UNUM has also submitted a reply brief in support of its motion. (Filing 27.) The court has carefully reviewed the record and adopts the following relevant undisputed facts:

### RELEVANT UNDISPUTED FACTS

1. Boles' second claim for relief involves Disability Income Policy Number LAD312058, issued by UNUM to Scott A. Boles, with an effective date of December 15, 1994 (the "Policy"). (*See* Filing 1 at CM/ECF pp. 4-5; Filing 26-1.)

2. When Boles acquired the Policy, he was a part-owner and manager of Lazlo's Restaurant ("Lazlo's") in Lincoln, Nebraska. (Filing 22-2 at CM/ECF p. 4, 50.)

3. The other Lazlo's owners at that time were Jay Jarvis ("Jarvis") and Brian Boles. (*Id*. at CM/ECF p. 4.)

4. Lazlo's was one of four related businesses that eventually became subsidiary companies of a holding company, Telesis, Inc. ("Telesis").[1] (*Id*. at CM/ECF p. 2.)

---

[1] For the purposes of this memorandum and order, and for clarity, I will refer to both Lazlo's and Telesis as Telesis.

5. On his Policy application, Boles indicated that his employer would pay the premium and that premiums should be billed to his employer's business address. (Filing 22-9 at CM/ECF p. 2.) Although Telesis paid the premiums, Boles agreed to reimburse Telesis for the amount paid. (Filing No. 22-2 at CM/ECF p. 10.)

6. To facilitate Telesis's payment of Policy premiums, Boles elected to be included in a "FlexBill" program. (*Id*. at CM/ECF p. 10; Filing 22-20.)

7. A "FlexBill" is a special billing method offered by UNUM that provides a group discount on certain insurance products, in exchange for an agreement to receive and pay a unified invoice for the coverage. (Filing 22-20 at CM/ECF pp. 1-2.)

8. At all times relevant to this matter, the FlexBill included Boles' Policy and at least two other individual policies. (*Id*. at CM/ECF p. 2.)

9. In 1994, the two other individual policies on the FlexBill were those of Jarvis and Wendy Heiss ("Heiss"). (Filing 22-12.) Heiss started out as a waitress, or a hostess, and worked her way up to a management position at Telesis. (Filing 22-2 at CM/ECF p. 5.) Heiss was not an owner of Telesis. (*Id*.)

10. At some point, an individual disability policy for Christine Slechta ("Slechta"), a Telesis manager, was also added to the FlexBill. (*Id*. at CM/ECF p. 5; Filing 22-13.) However, on September 15, 2008, a Telesis employee called UNUM to remove Slechta and Heiss (who had married and changed her name to Wendy Young) from the FlexBill. (Filing 22-13.)

11. Shortly thereafter, Amy Frank was added to the FlexBill. (Filing 22-2 at CM/ECF p. 22.) Amy Frank later married and changed her name to Amy Huss ("Huss"). (Filing 22-14.) Huss is Brian Boles' personal assistant and was paid as a Telesis employee. (Filing 22-2 at CM/ECF p. 5; Filing 22-6.)

12. Telesis did not require Huss to personally pay for her insurance policy. (Filing 22-2 at CM/ECF p. 15.)

13. From 1994 through 1999, Boles reimbursed premium payments to Telesis by deducting the payments from an expense account that Telesis provided to him as an owner of the company. (Filing 22-18 at CM/ECF p. 3.) However, Telesis has no records of such deductions or reimbursements because it only keeps accounts payable records for seven years. (*Id*. at CM/ECF p. 2.)

14. In 2000, Telesis altered its "expense account" method of reimbursement, and began to deduct Boles' Policy premiums directly from Boles' W-2 wages. (*Id*. at CM/ECF p. 4.)

15. Telesis's annual deduction from Boles' paychecks for the Policy totaled $1,934.92 in 2000 and 2001, and $2,120.30 in each year from 2002 through 2008. (*Id*. at CM/ECF p. 4, 13.) Those amounts were less than the premiums paid by Telesis to UNUM in each year. (*Id*.) In total, between 2000 and 2008, Telesis contributed $3,869.06 in premium payments toward the Policy.[2] (Filing 22-18 at CM/ECF p. 13.)

16. Boles' employment with Telesis ended in March 2009. (Filing 22-18 at CM/ECF p. 5.)

17. Ultimately, Boles made a claim on the Policy. (Filing 22-15 at CM/ECF pp. 4-11.)

18. After UNUM denied his benefit claim, Boles filed suit alleging in his second claim for relief that UNUM is liable for breach of contract under the Policy.

---

[2] I calculated this number by adding the differences between the Policy premiums that Telesis paid to UNUM and the amount that Telesis deducted from Boles' paychecks from 2000 to 2008. (Filing 22-18 at CM/ECF p. 13.)

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotation & alterations omitted). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

> Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact. The moving party bears the burden to demonstrate that there is no issue of material fact. The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of specific facts creating a triable controversy.

*Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (internal citations & quotations omitted).

## UNUM'S MOTION

In its motion, UNUM argues that Boles' Policy "is governed by ERISA because (1) Boles' employer established, maintained and administered the Policy in a manner that meets the definitional requirements of benefit plans governed by ERISA, and (2) the plan does not fall within the safe harbor provisions of ERISA regulations." (Filing 21 at CM/ECF p. 6.) Boles argues that the Policy is not governed by ERISA because

6

(1) it is not an employee welfare benefit plan as defined under ERISA and (2) it meets ERISA's safe-harbor provision. (Filing 25 at CM/ECF pp. 14-29.)

## I.   ERISA Applicability

### *A.   ERISA Plan*

Whether the Policy is a "plan" within the meaning of ERISA "is a mixed question of fact and law." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994). ERISA defines a "plan" as "an employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, [or] disability . . . ." 29 U.S.C. § 1002(1). In determining whether a plan is "a reality," a court must look at the surrounding circumstances to determine whether "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 629 (8th Cir. 2001) (quoting *Harris v. Arkansas Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986)). "[N]o single action in itself necessarily constitutes the establishment of the plan." *Id*. However, an ERISA plan must embody a "set of administrative practices." *Id*.; *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987).

Here, Boles initially purchased the Policy as an owner of Telesis, and elected to have the policy billed through Telesis. (Filing 22-2 at CM/ECF pp. 4, 10, 50.) Although Boles intended to reimburse Telesis for the Policy premiums, Telesis paid $3,869.06 toward Boles' Policy premiums from 2000 to 2008. (Filing 22-18 at CM/ECF p. 13.) "[A]n employer's payment of insurance premiums, standing alone, is substantial evidence of the existence of an ERISA plan." *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995) (collecting cases); *see also Credit Managers Ass'n of*

7

*S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (noting that "[a]n employer . . . can establish an ERISA plan rather easily . . . unless it is a mere advertiser who makes no contributions on behalf of its employees). Boles argues that Telesis's payment of his Policy premiums resulted from a "bookkeeping error," and that Telesis "will make a demand" for payment of the "money under-withheld" from his pay. (Filing 25 at CM/ECF pp. 3, 24.) However, there is no evidence of such a demand or any reimbursement.

In addition to paying a portion of Boles' Policy premiums for nearly a decade, Telesis used UNUM's FlexBill option to provide insurance to several non-owner employees. (*See* Filing 22-2 at CM/ECF p. 22; Filing 22-12; Filing 22-13.) Initially, Boles purchased the Policy in conjunction with two other individual policies: one for Jarvis, a Telesis co-owner, and one for Heiss, a non-owner employee. (*See* Filing 22-2 at CM/ECF pp. 4-5; Filing 22-12.) Each of these policy holders elected to be billed on a FlexBill, and over time, Telesis removed and added non-owner employee policies to maintain the FlexBill group discount. (*See* Filing 22-2 at CM/ECF pp. 5, 22; Filing 22-12; Filing 22-13.) The Supreme Court has instructed that "[p]lans that cover only sole owners or partners and their spouses . . . fall outside [ERISA's] domain," but plans that cover a working owner or partner and at least one non-owner employee are considered employee benefit plans and thus "fall entirely within ERISA's compass." *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 21 (2004); *but see Heral v. Unum Life Ins. Co. of Am.*, No. 4:08CV00272 JLH, 2008 WL 5000190, at *4 (E.D. Ark., Nov. 18, 2008) (concluding business owner's individual disability policy was not converted into an ERISA plan where, several years after the owner purchased his individual policy, the business purchased two additional policies for non-owner employees and where the insurance company, on its own initiative, discounted the two additional polices and billed the business for all three policies on a single bill).

Upon review of the facts of this case, and pursuant to the standard set forth by the Eighth Circuit in *Johnston*, it is evident that a reasonable person could conclude

8

that Telesis maintained a plan, within the meaning of ERISA, that offered disability benefits to its employees. Because Telesis engaged in the ongoing administration of the plan by using a FlexBill option to provide several non-owner employees with insurance policies, by processing paperwork in conjunction with the policies, and by facilitating, and paying, policy premiums, the plan embodied a set of administrative practices. See *Johnston*, 241 F.3d at 629-30.

*B.   ERISA Safe Harbor*

Although the Policy is a plan within the meaning of ERISA, it may be excluded from ERISA coverage under the safe-harbor provision established by the Department of Labor. The safe-harbor provision provides that:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). In order for the safe-harbor provision to apply, all four of the safe-harbor criteria must be met. *See Dam v. Life Ins. Co. of N. Am.*, No. 05-4200, 2006 WL 3436576, at *1-2 (8th Cir. 2006) (unpublished).

Turning to the first factor, the undisputed facts show that Telesis paid $3,869.06 toward Boles' Policy premiums from 2000 to 2008. (*See* Filing 22-18 at CM/ECF p. 13.) As discussed above, Boles argues that Telesis's payment of his Policy premiums resulted from a "bookkeeping error," and that Telesis "will make a demand" for payment of the "money under-withheld" from his pay. (Filing 25 at CM/ECF pp. 3, 24.) Again, there is no evidence of such a demand or any reimbursement. Moreover, even if Boles reimbursed Telesis for these payments, Telesis's advances of these payments constituted an interest-free loan sufficient to be considered a contribution to the plan. *See, e.g., Spillane v. AXA Fin., Inc.*, 648 F.Supp.2d 690, 699 (E.D. Pa. 2009) (concluding ERISA's safe-harbor provision did not apply where plaintiff reimbursed his employer for the exact amount of advanced premiums because "such advances still constituted an interest-free loan that amount to a contribution to the plan"). Further, Telesis paid for Huss's policy premiums. (Filing 22-2 at CM/ECF p. 15.) In light of these facts, the safe-harbor provision does not exclude the Policy from ERISA coverage.

## II.  Preemption and Amendment

Because the Policy is a plan within the meaning of ERISA and because the safe-harbor provision does not exclude it from ERISA coverage, Boles' second claim for relief is preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1997) (concluding state law claims "based on alleged improper processing of a claim for benefits under an employee benefit plan[] undoubtedly meet the criteria for pre-emption" under ERISA's express preemption clause). However, UNUM has asked me to permit Boles to "replead his case seeking only the relief provided by ERISA." (Filing 21 at CM/ECF pp. 16-17.)

UNUM's request is granted. Boles shall file an amended complaint on or before February 20, 2012. If Boles fails to file an amended complaint in accordance with this memorandum and order, I will dismiss his second claim for relief and this case shall proceed on his first claim for relief only.

Accordingly,

IT IS ORDERED:

1.      Defendant UNUM's Motion for Judicial Determination of ERISA Application and Preemption (filing 20), construed as a motion for partial summary judgment, is granted.

2.      Boles' second claim for relief is preempted by ERISA.

3.      Boles shall file an amended complaint on or before February 20, 2012. If Boles fails to file an amended complaint in accordance with this memorandum and order, I will dismiss his second claim for relief and this case shall proceed on his first claim for relief only (*see* filing 1).

DATED this 24th day of January, 2012.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.